IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| United States of America | ) | |
| | ) | |
| v. | ) | No. 21 C 538 |
| | ) | |
| Julian Martin | ) | |
| | ) | |
| Defendant. | ) | |

MEMORANDUM OPINION AND ORDER

Julian Martin was a high-ranking member of the Chicago street gang known as the Imperial Insane Vice Lords (the "Double I's" or "IIVL"), which controlled drug operations near Thomas Street and Keystone Avenue on Chicago's West Side. A multi-year investigation into the gang's activities led to the indictment of Martin and two dozen co-defendants, two of whom—Nathaniel Hoskins and Torrie King—were tried alongside Martin in a bench trial before me. The superseding indictment charged Martin with six of twenty-nine counts, and I found him guilty of four: racketeering conspiracy, in violation of 18 U.S.C. § 1962(d) (Count 1); being an accessory after the fact to murder, in violation of 18 U.S.C. § 3 (Count 6); conspiracy to possess with intent to distribute and distribute controlled substances, in violation of 21 U.S.C. § 841(a)(1), in violation of 21 U.S.C. § 846 (Count 9); and being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1) (Count 22). I sentenced Martin to a below-Guidelines term of 310 months of incarceration.

Martin appealed his conviction and sentence. He asserted a claim under *Brady v. Maryland*, 373 U.S. 83 (1963), as well as a Confrontation Clause claim and a claim that I erroneously treated the attempted murders of Brian Smith and Tony Carr as relevant conduct at his sentencing after

previously concluding at King's sentencing that these crimes were not relevant conduct. The Seventh Circuit rejected all of these arguments and affirmed Martin's conviction and sentence. *See United States v. King*, 910 F.3d 320 (7th Cir. 2018).[1]

On October 19, 2020, Martin filed a motion under 28 U.S.C. § 2255,[2] which I granted him leave to supplement by January 4, 2021. Martin filed nothing by that date, but on January 29, 2021, he filed a § 2255 motion accompanied by an emergency motion for enlargement of time, which characterized the substantive motion as a "corrected" § 2255 motion. The government treats the January motion as Martin's operative—and exhaustive—request for relief pursuant to § 2255.[3] Martin, however, characterizes the January motion as a "supplement" to his October motion, not an amendment or replacement of it, and asks me to consider both motions.

In his January motion, Martin articulates the following grounds for relief: 1) that the government violated his right to due process by failing to disclose pre-trial statements made by its trial witness Darrell Pitts and by presenting Pitts's perjured testimony; 2) that his attorney was constitutionally ineffective because he: (a) failed to interview and call certain of Martin's co-defendants at trial; (b) failed to seek Martin's dismissal from paragraph 10 of Count One, a notice of special finding and enhanced sentencing provision which alleged that, as part of the racketeering conspiracy, Martin and others conspired to possess with intent to distribute and distribute controlled substances, including 1000 grams or more of heroin, and 280 grams or more of crack cocaine; (c) misadvised Martin regarding his right to testify in his own defense; (d) proceeded to

---

[1] For purposes of this decision, I assume familiarity with the background facts of this case, which are set forth in the Seventh Circuit's decision.

[2] That is, he placed the motion in the prison legal mail system on that date, which is what counts for purposes of determining timeliness. *Ray v. Clements*, 700 F.3d 993 (7th Cir. 2012) ("A prisoner's pro se § 2255 motion is deemed filed the date it is delivered to prison authorities for mailing") (alterations and citation removed).

[3] The government states that it does not object to the timeliness of the January motion.

trial with a conflict of interest with respect to co-defendant Nathaniel Hoskins's counsel that caused him (Martin's counsel) to forgo certain arguments in Martin's favor, and failed to seek severance of his trial from Hoskins's; (e) failed to raise a multiple conspiracy challenge; (f) failed to object to Martin's being tried jointly with Hoskins and King; (g) failed to defend adequately against Count 6, charging Martin as an accessory after the fact of murder; (h) failed to cross-examine witnesses Darrell Pitts and Sarah Watkins adequately; (i) failed to object to my putatively erroneous Guidelines calculation at sentencing; (j) failed to prepare adequately for trial; and (k) failed to raise on appeal all of the arguments contained in his § 2255 motion and in his post-trial motion for a judgment of acquittal and a new trial. Finally, Martin asserts, 3) that his conviction under § 922(g)(1) violates *Rehaif v. United States*, 139 S. Ct. 2191 (2019).

In a motion styled as a request for a continuance, Martin argues that his October 2020 motion raised the following issues in connection with his ineffective assistance of counsel claim, which he claims the government failed to address in its response to the January 2021 motion: (l) counsel failed to ascertain the evidentiary value of calling witnesses; (m) counsel impermissibly advised Martin on his right to testify; (n) counsel improperly advised Martin on his right to a jury trial[4]; (o) counsel proceeded to trial with Hoskins and King; (p) counsel was unprepared; and (q) counsel provided ineffective assistance generally. DN 12 at 2-3.[5]

For the reasons explained below, I deny both § 2255 motions as well as Martin's related motions to strike and for summary judgment.

---

[4] The motion for a continuance twice refers to an error by counsel concerning Martin's right to testify, but I assume that the second reference is intended to be to the claim in his October 2020 motion that counsel improperly advised him on his right to a jury trial.

[5] Martin argues that the government's failure to respond to these claims amounts to waiver, and he seeks summary judgment on these claims on that basis. I need not grapple with the waiver issue, however, because I have examined both motions and conclude that none of the claims in either has merit.

II.

Under 28 U.S.C. § 2255, a court may vacate, set aside, or correct a sentence imposed in violation of the laws of the United States or otherwise subject to collateral attack. Yet relief under this section "is an extraordinary remedy because it asks the district court essentially to reopen the criminal process to a person who already has had an opportunity for full process." *Almonacid v. United States*, 476 F.3d 518, 521 (7th Cir. 2007). It is warranted "only for 'an error of law that is jurisdictional, constitutional, or constitutes a fundamental defect which inherently results in a complete miscarriage of justice.'" *Harris v. United States*, 366 F.3d 593, 594 (7th Cir. 2004) (quoting *Borre v. United States*, 940 F.2d 215, 217 (7th Cir. 1991)). Although the statute entitles a defendant to an evidentiary hearing if he "alleges facts that, if proven, would entitle him to relief," *Kafo v. United States*, 467 F.3d 1063, 1067 (2006) (citation omitted), an evidentiary hearing is not required if the defendant's allegations are "vague, conclusory, or palpably incredible rather than detailed and specific," *id.*, (quoting *Bruce v. United States*, 256 F.3d 592, 597 (7th Cir. 2001)), or if "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief," *Almonacid*, 476 F.3d at 521 (quoting *Bruce*, 256 F.3d at 597). In particular, a hearing is unnecessary when the court has "sufficient information, based on its observations, the record, and the law" to ascertain whether the defendant received effective assistance of counsel. *Rodriguez v. United States*, 286 F.3d 972, 987 (7th Cir. 2002), *as amended on denial of reh'g and reh'g en banc* (May 21, 2002). The judge who presided over the defendant's trial and sentencing is "uniquely suited to determine if a hearing [is] necessary." *Id*. (alteration in original).

Because Martin devotes the bulk of his motion to arguments attacking his attorney's representation, I begin with his claims of ineffective assistance of counsel.[6] These are governed by the well-known, two-pronged standard of *Strickland v. Washington*, under which a defendant must show both that (1) his trial attorney's performance "fell below an objective standard of reasonableness," and (2) "but for counsel's unprofessional errors the result of the proceeding would have been different." 466 U.S. 668, 687–96 (1984)). "To reflect the wide range of competent legal strategies and to avoid the pitfalls of review in hindsight, [the court's] review of an attorney's performance is highly deferential and reflects a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Yu Tian Li v. United States*, 648 F.3d 524, 527–28 (7th Cir. 2011). To establish prejudice, a defendant must "show that there is a reasonable probability that, but for counsel's errors, the result of the proceedings would have been different, such that the proceedings were fundamentally unfair or unreliable." *Blake v. United States*, 723 F.3d 870, 879 (7th Cir. 2013). Because failure to establish either prong is fatal to Martin's claims, I need not address both prongs if either is deficient. *Thompson v. Vanihel*, 998 F.3d 762, 767 (7th Cir. 2021).

Several the challenges Martin articulates to his counsel's representation fail at threshold because the errors he attributes to his counsel simply are not borne out by the record. For example:

---

[6] Martin has filed a motion to strike the government's response to these claims on the ground that it is not supported by an affidavit from his attorney. This argument fails to appreciate the objective nature of the inquiry into counsel's performance, which does not require evidence of counsel's actual strategy. *See Adeyanju v. Richardson*, 448 F. Supp. 3d 984, 994-95 (W.D. Wis. 2020) (explaining that "the question is not whether counsel's choices were strategic, but whether they were reasonable," and noting that while the presumption that counsel's decisions were strategic is heightened where an attorney explains the basis for his trial decisions, such evidence is not required for the presumption that his performance was reasonable) (internal quotation marks and citation omitted).

5

- Martin complains that his attorney failed to object to my calculation of the applicable Guidelines. But in fact, his attorney raised numerous objections to the Guidelines calculations, which he argued forcefully and repeatedly. *See*, R. 1384 (objection to inclusion of alleged plot to murder Brian Smith as relevant conduct); R. 1513 at 2-15 (raising inclusion of the Smith attempted murder and several other objections to proposed Guidelines calculations in sentencing memorandum); R. 1590 at 14-26, 32-33 (reiterating objections during sentencing).

- Martin criticizes his attorney's failure to present the "rimless wheel" and "multiple conspiracy" arguments that Martin views as favorable to his own defense but adverse to Hoskins's, and he attributes this failure to an unspecified conflict of interest involving Hoskins's counsel. Setting aside the factual and conceptual flaws in this argument,[7] the record reveals that Martin's attorney in fact presented the very arguments Martin faults him for omitting. *See,* e.g., R. 1135 at 1320 (arguing in closing that evidence showed "all different types of factions," not a unitary racketeering enterprise), 1322-1324 (arguing that Hoskins told several different people they were his "right hand"), 1340-1341 (arguing that evidence did not show Martin to have participated in "overarching conspiracy"); *see also* R. 1128 at 78-79 (eliciting testimony from government witness consistent with foregoing arguments).

---

[7] In this claim, Martin faults his counsel for declining to "throw Hoskins under the bus" by presenting argument and evidence to show that Andre Brown had indeed murdered Marcus Hurley, contrary to Hoskins's argument that the government had not established that fact. *See* Jan. Mot. at 19. Elsewhere in his motion, however, Martin echoes Hoskins's argument that the government failed to prove that Brown had killed Hurley, Jan. Mot. at 29, and asserts that in any event, Martin was "not concerned with whether Brown and Hoskins killed Hurley." Jan. Mot. at 19. It is difficult to discern from Martin's shifting position what he believes he would have gained from efforts by his counsel to bolster the government's case regarding Brown's involvement in the Hurley murder; but I need not puzzle out his theory, since the record reveals that his attorney in fact made the specific arguments Martin claims he should have: that Hoskins conspired with multiple individuals who did not conspire with one another, and that to the extent Martin worked in concert with any of his codefendants, any agreements he had with them were not part of the overarching RICO conspiracy the government charged.

- Martin claims that his attorney was ineffective for "allowing" him to be tried jointly with Hoskins and King. But as Martin himself acknowledges, DN 1 at 48, his attorney filed a motion to sever Martin's trial from that of several codefendants, including Hoskins. R. 682. I denied the motion with respect to Hoskins, R. 725, and Martin offers no reason to believe that a motion to sever his trial from King's would have succeeded under the relevant law. *See Zafiro v. United States*, 506 U.S. 534, 539 (1993) (severance of properly joined defendants is appropriate "only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence.").

Because it is plain from the record that Martin's attorney did not make the errors described above, they cannot have compromised his performance. Martin's claims based on these aspects of his attorney's performance are denied.[8]

The remaining errors Martin identifies in his ineffective assistance claims, which I address *seriatim* below, likewise fail to establish Sixth Amendment violations under *Strickland*. Martin first argues that he was prejudiced by his counsel's failure to call certain of his codefendants as witnesses at his trial. In particular, he claims that Nathaniel Hoskins, Torrie King, Gregory Hawthorne, Otis Sykes, and Joseph Faulkner would have provided testimony that would have exculpated Martin and/or impeached the government's witness, Darrell Pitts. This argument has multiple flaws.

To begin, neither Faulkner nor Sykes provided an affidavit stating what his testimony would have been had he been called as a witness at Martin's trial. For that reason alone, Martin has not shown—and is not entitled to an evidentiary hearing in an effort to show—that his attorney was ineffective for failing to call these witnesses. *See Kafo,* 467 F.3d at 1068 (Seventh Circuit requires "strict observance of the affidavit requirement" under § 2255); *Galbraith v. United States*,

---

[8] This disposes of Martin's claims 2) (d), (e), (f), (i), and (o), above.

313 F.3d 1001, 1009 (7th Cir. 2002) ("detailed and specific" affidavit attesting to facts entitling defendant to § 2255 relief is a "threshold requirement for securing an evidentiary hearing."). *See also United States v. Lathrop*, 634 F.3d 931, 939 (7th Cir. 2011) ("When a petitioner alleges that counsel's failure to investigate resulted in ineffective assistance, the petitioner has the burden of providing the court with specific information as to what the investigation would have produced.").

While Martin did submit—albeit belatedly—affidavits signed by Talbot Shields, King, and Hawthorne, he has not demonstrated either that these witnesses were available for his attorney to interview prior to his trial, or that the facts they assert in their affidavits—even assuming they would have testified to them at Martin's trial—would have made a difference in the outcome. In fact, because King was tried jointly with Martin and exercised his right not to testify, R. 1134 at 1188-1189, Martin's attorney was prohibited from calling King as a witness and cannot have been ineffective for failing to do so.[9] Moreover, as the government observes, Martin's attorney could not have interviewed any of King, Shields, or Hawthorne without the knowledge and consent of their respective attorneys, and Martin offers no basis to believe that any of their attorneys would have consented to such an interview. Indeed, "it is difficult to imagine any reasonable criminal defense attorney doing so under the circumstances." *Morales v. McCann*, No. 00C2656, 2010 WL 748203, at *38 (N.D. Ill. Feb. 25, 2010) (Kennelly, J.) (noting that when a codefendant's testimony stating that the defendant was *not* involved in a criminal offense necessarily raises the inference that the codefendant *was* involved, "[n]o criminal defense attorney worthy of the term would have allowed" the codefendant to testify for the defendant), *aff'd sub nom*. *Morales v. Johnson*, 659 F.3d 588 (7th Cir. 2011)).

---

[9] To the extent Martin suggests that his attorney should have moved to sever Martin's trial from King's to avoid this problem, that argument goes nowhere for the reason stated above.

8

At all events, even in the unlikely event that Shields, Hawthorne, or King would have testified at Martin's trial consistently with the statements in their affidavits, their testimony would not have altered my view of Martin's guilt. The thrust of their collective statements is that: 1) Martin was neither the "Prince" of the Double I's nor its head in Hoskins's absence; 2) Martin was not often present at the Keystone drug market and did not distribute drugs there; 3) the government's charged conspiracy did not exist, only different groups and individuals working for themselves; 4) Martin hid Andre Brown from a rival gang, not from law enforcement; 5) Martin did not intend to violate RICO; and 6) certain of Darrell Pitts's statements at trial incriminating Martin were untrue. None of this testimony would have raised a reasonable doubt in my mind about Martin's guilt.

As the government correctly observes, my conclusion that Martin was guilty of Counts 1 and 9 rested on evidence that Martin knowingly conspired to participate in IIVL affairs through a pattern of racketeering activity, as well as evidence that he agreed to possess with intent to distribute and distribute narcotics at the gang's Keystone drug market. In this connection, I found Pitts's testimony about the structure and functioning of the Double I's to be generally credible, and his statements about Martin's role as a high-ranking member of the enterprise who exercised authority over lower-ranking members were corroborated by statements in a number of recorded calls. *See* R. 1165 (transcript of verdict) at 1404-1405, 1410-1411. Testimony by Hawthorne, Shields, and/or King to the effect that Martin was not the "Prince" of the Double I's and did not lead the gang in Hoskins's absence would not have altered my view of that evidence.

My conclusion that Martin was guilty of Count 6 rested on evidence that included, among other things, photographs of Martin with Brown in the days after the murder and statements in numerous recorded calls reflecting that Martin helped to hide Brown and change his appearance.

9

Further, I found that there was no other plausible reason for doing this than to prevent Brown's apprehension by law enforcement. *See* R. 1165 at 1409-1410. My view of this evidence would not have changed if Shields, Hawthorne, and/or King had testified consistently with the statements in their affidavits.

Finally, Martin's conviction on Count 22 of being a felon in possession of a firearm rested on a stipulation regarding Martin's prior felony conviction; another stipulation regarding interstate commerce; Martin's arrest while in possession of the guns in question; and his post-arrest statements, all of which proved the elements of this offense beyond a reasonable doubt. *See* R. 1165 at 1414-1415. Nothing in his codefendants' affidavits addresses any element of this offense.

For at least the foregoing reasons, Martin has not established that his counsel rendered ineffective assistance by failing to investigate and call his codefendants as trial witnesses.[10]

Martin's next argument is that his counsel should have moved for his dismissal from paragraph 10 of Count 1, which gave notice of enhanced sentencing provisions if I found that he was guilty of the racketeering conspiracy alleged in that count *and* that his participation in the conspiracy included conspiring to possess with intent to distribute and distribute 280 grams or more of crack cocaine. But Martin does not allege any defect in the indictment that would warrant dismissal. The substance of his argument is that the evidence at trial did not support my finding regarding the drug quantity attributable to him. But I explained my drug finding and its evidentiary basis when I pronounced my verdict as to Count 1, *see* R. 1165 at 1411-1414, and his argument does not persuade me that the finding was erroneous. Moreover, the record reflects that Martin's attorney argued at length that the government had not proven its drug quantity allegations, *see* R.

---

[10] This disposes of Martin's claims 2) (a) and (l), above.

1135 at 1340-1343, so even if the finding were in error, it would not be due to his attorney's failure to object to it.

Whatever the theory behind Martin's claim based on the special findings allegations in paragraph 10 of Count 1, he has not established an entitlement to § 2255 relief. He has offered no reason to believe that a motion to dismiss him from a facially valid charge would have been granted, *see Rodriguez,* 286 F.3d at 985 (7th Cir. 2002) (counsel is not required to raise arguments that are likely to fail), and his attorney argued strenuously, albeit unsuccessfully, that the facts did not support the special finding incorporated in a charge on which I ultimately found him guilty. There was no defect in his attorney's performance on these fronts.[11]

Martin next argues that his attorney gave him incorrect or inadequate advice concerning, 1) his right to testify, and 2) his right to a jury trial. In connection with the first claim, he argues that his attorney did not explain that "the Government would make use of his words" in recorded conversations at trial, which would "go uncontested" if he did not present his side of the story at trial. DN 1 at 15. He also argues that his attorney did not explain that he could minimize the scope of cross-examination by limiting his direct examination. Neither argument has merit.

As the government points out, I admonished Martin regarding his right to testify *after* the government had rested its case, by which time Martin had heard the evidence against him. Accordingly, even if his attorney had failed to explain that the government would "make use of his words," he certainly knew that his recorded statements played a central role in the government's case by the time he waived his right to testify. Accordingly, he cannot have been prejudiced by his attorney's alleged omission. Nor was he prejudiced by his attorney's putative failure to explain that he could control the scope of cross-examination by circumscribing the questions posed on

---

[11] This disposes of Martin's claim 2) (b), above.

direct. Indeed, Martin argues that if he had been called, he would have testified broadly, among other things, that he "had nothing to do with" the open-air drug market at the center of the government's RICO case, did not hide Andre Brown from law enforcement, and was "actually innocent of all charges." Clearly, the opportunity to present narrowly-tailored testimony on discrete issues is not what Martin faults his attorney for failing to give him, and the sweeping testimony he claims would have made a difference to his trial would have opened the door to equally far-reaching questioning by the government. A competent attorney could reasonably have viewed that scenario as ill-advised. *See Roe v. Flores-Ortega*, 528 U.S. 470, 481 (2000) (*Strickland*'s performance prong is an objective test that asks, "not whether counsel's choices were strategic, but whether they were reasonable."), citing *Strickland*, 466 U.S. at 688.

Anyway, none of the testimony Martin claims he would have offered would have altered my view of his guilt. His testimony that he had "nothing to do with" the Keystone drug market was directly contradicted by his recorded statements. Additionally, Martin's recorded statements describing his role in helping Brown to change his appearance and why it was necessary for Brown to do so left no doubt in my mind that he was guilty as an accessory after the fact of murder. Martin's broad denial of his involvement in the charged offenses would have added nothing to his attorney's thorough cross-examination of the government's witnesses to cast doubt on the inferences the government drew from the recordings.[12] Finally, Martin's insistence that he was "actually innocent" of all charges was belied by the totality of government's evidence and similarly

---

[12] Indeed, Martin's assertion that the government's evidence went "uncontested" does not accurately portray the defense his attorney put on at trial. Martin's attorney questioned one of the case agents concerning statements he listened to in recorded calls between Martin and Hoskins, aiming to impeach the declarants' statements. R. 1134 at 1177-81, 1185. Martin's counsel also argued in closing that government's recordings did not prove what the government said they proved, and that the government's key witnesses were not credible.

would not have caused me to question his guilt on the charges of which I convicted him. In other words, there is no reasonable probability that if Martin had testified, "the result of the proceeding would have been different." *Strickland*, 466 U.S. at 689. For at least the foregoing reasons, Martin has not shown that his attorney rendered ineffective assistance with respect to his advice regarding Martin's right to testify.

Martin's claim that his attorney induced him to waive his right to a jury trial in favor of a bench trial similarly suggests no basis for § 2255 relief. Martin explains that his counsel's advice was based on the view that a Chicago jury would be "easily influenced" by evidence of the Double I's gang activity and the fact that his codefendants had agreed to waive their right to a jury trial. *See* R. 1951 at 20-22. As a result, Martin claims, he "unknowingly" waived his right to trial by jury. This claim does not survive scrutiny.

At the outset, the record reflects that I admonished Martin of his constitutional right to a jury trial in open court, and that he acknowledged his understanding contemporaneously in a written waiver—facts his § 2255 motion fails to mention. *See* R. at 1065, 1082. While it is true that a defendant's waiver of his constitutional right to a jury must be knowing, intelligent, and voluntary, a waiver is presumed valid so long as it reflects the defendant's understanding "that the choice confronting him was, on the one hand, to be judged by a group of people from the community, and on the other hand, to have his guilt or innocence determined by a judge." *U.S. ex rel. Williams v. DeRobertis*, 715 F.2d 1174, 1180 (7th Cir. 1983). Martin does not contend that his attorney's advice confused or misled him as to the nature of the choice he faced. Nor does Martin argue that his attorney coerced him to relinquish his right to a jury trial, that the reasons his attorney allegedly gave him for electing a bench trial were substantively erroneous or misguided, or that he was prejudiced by following his attorney's advice. In short, Martin's vague allegation that his

attorney somehow interfered with his right to a jury trial finds no support in the record and does not establish his entitlement to relief.[13]

Martin next takes issue with his attorney's overall defense with respect to Count 6, arguing that his attorney "failed to rebut" the government's evidence that Martin served as an accessory after the fact by harboring Brown after he murdered Marcus Hurley. But the evidence of Martin's guilt on this count was difficult to contest. Recall that:

> The evidence included surveillance footage of the actual murder [of Brown], along with circumstantial evidence indicating that it was committed in retaliation for an incident involving members of the Four Corner Hustlers ("Hustlers"), a gang with whom the Vice Lords had an ongoing feud. Recorded calls showed both that Hoskins, Martin, and King sought to shelter Brown following the murder and that Hoskins took credit for it. The government also introduced a post-arrest statement that Hoskins had given to Investigator Andrew Marquez, which included information about the murder. Marquez testified that Hoskins told him that he was with Martin, Brown, and others following the murder of Hurley and that Brown informed them that he had killed Hurley.

*United States v. King*, 910 F.3d 320, 325 (7th Cir. 2018). Martin's specific complaint about his attorney's performance is that "counsel chose to rebut the government's versions of events as if they were not true. In doing this, counsel never established that at no time was the Chicago Police Department, or a federal agency, actively pursuing Brown." DN 1 at 29. But law enforcement's pursuit of Brown is irrelevant. As the government points out, the elements it needed to establish to prove Martin's guilt were: 1) that Brown committed a murder in aid of racketeering activity; 2) that Martin knew Brown had committed the murder; and 3) that Martin assisted Brown in some way after the murder, 4) with the intent to prevent Brown's arrest, prosecution, or punishment. *See* R. 1165 at 1410 (transcript of verdict); Seventh Circuit Pattern Criminal Jury Instructions, 18 U.S.C § 3 (2020 ed.). The evidence summarized above established each of these elements, none

---

[13] This disposes of Martin's claims 2) (c), (m), and (n), above.

of which turns on a pursuit by law enforcement. Accordingly, counsel was well-advised not to address that issue and to focus instead on attacking the government's evidence directed to the first and second elements of the charged offense. *See Peterson v. Douma*, 751 F.3d 524, 533 (7th Cir. 2014) ("[t]he Sixth Amendment does not require counsel ... to press meritless arguments before a court, and it is always good strategy to avoid wasting time or the court's attention with claims that are going nowhere.") (ellipses in original, internal quotation marks and citation omitted).[14]

Nor has Martin established the next ground he asserts for relief: that his attorney's cross-examination of witnesses Darrell Pitts and Sarah Watkins was constitutionally deficient. Martin argues that had his attorney asked these witnesses certain questions, their answers would have rebutted the government's evidence that he held a position of authority within the Double I's and thus the factual premise for attributing at least 280 grams of crack to him. But Martin has offered no evidence of how these witnesses would have testified if cross-examined further by his counsel. This shortcoming alone is fatal to his claim. *See Kafo,* 467 F.3d at 1068; *Galbraith v. United States*, 313 F.3d at 1009 (7th Cir. 2002).

In any event, the record reveals that Martin's counsel hammered Pitts on cross-examination, R. 1129 at 214-268, attacking his credibility by exposing inconsistencies in his testimony and questioning him about statements in the government's recordings that appeared to suggest that Hoskins placed Pitts himself, rather than Martin, in charge of the gang's affairs in his absence and cast doubt on Pitts's testimony that Martin was the "Prince" of the Double I's. See e.g., R. 1129 at. 235-236, 253 (Q: "Now from reading that, it's your understanding, according to what Mr. Hoskins is saying, that he is going to put the . . . whole gang . . . in the hands of Darrell

---

[14] This disposes of Martin's claim 2) (g), above.

15

Pitts, right?" A: "After reading this, yes, that is what he is saying"; Q: "And [Hoskins] says, when he is not around, you're . . . his right-hand man[?]" A: "That's what he say, yep.").

With respect to Watkins, her testimony on direct examination did not implicate Martin; the thrust of her testimony was that as one of seven or eight street-level sellers at the Keystone drug market, she sold heroin and crack for several of Martin's codefendants. *See* R. 1133 at 1019-1026. Given this testimony, a competent attorney could reasonably have determined that asking Watkins specific questions about Martin and his role in the alleged conspiracy was a risky strategy likely to do more harm than good. Moreover, even if Watkins had testified that she did not sell drugs for Martin, and that Martin had no authority over her, this testimony would hardly have exculpated Martin, given that she was one of several individuals who sold drugs at the Keystone location. In short, Martin has not shown that his attorney's decision not to cross-examine Watkins was constitutionally defective.[15]

Martin's generic claims that his counsel was unprepared for trial and rendered ineffective assistance generally do not rest on the kind of "detailed and specific" allegations that warrant an evidentiary hearing to test a claim for § 2255 relief. *See Kafo*, 467 F.3d at 1067. At all events, my recollection of the defense Martin presented—which is confirmed by my recent review of the trial transcripts and pre-trial proceedings—is that Martin's attorney, Damon Cheronis, represented defendant capably at trial, examining and cross-examining witnesses skillfully and raising appropriate motions, arguments, and objections throughout both trial and pre-trial proceedings. Contrary to Martin's allegations, his counsel was well-prepared for trial and represented his client competently and zealously.[16]

---

[15] This disposes of Martin's claim 2) (h).
[16] This disposes of Martin's claims 2) (j), (p), and (q).

Finally, Martin argues that his counsel was ineffective for failing to raise any of the above issues on appeal. To prevail on this claim, Martin must show that his attorney failed to raise an issue that was both obvious and clearly stronger than the issues that were raised on appeal. *Smith v. Gaetz*, 565 F.3d 346, 352 (7th Cir. 2009) (citation omitted). Martin does not attempt to make this showing, but even if he had, because each of the arguments he raises in his motion lacks merit for the reasons explained above, his counsel reasonably declined to pursue them.[17]

This leaves Martin's two claims based on issues other than his attorney's representation. In the first, Martin asserts that the government violated his due process rights by failing to turn over the totality of Pitts's statements prior to trial and by eliciting perjured trial testimony from Pitts. Under the Jencks Act, 18 U.S.C. § 3500, "witness statements in the possession of the United States which relate to the subject matter as to which the witness testifies shall be turned over to the defendant for examination and use." *United States v. Elem*, 269 F.3d 877, 882 (7th Cir. 2001) (citation omitted). In this case, the record shows that the government timely turned over Pitts's grand jury testimony and all other then-existing Jencks Act material. *See* Resp. at Exh. A; R. 444. Martin complains that the government failed to disclose Pitts's statement identifying Martin as the Double I's "Prince." Even if that is true, however, Martin has not shown any prejudice resulting from the omission. *See United States v. Johnson*, 200 F.3d 529, 535 (7th Cir. 2000) ("although the text of the Act does not itself require a demonstration of prejudice, courts have held that relief may not be granted under the Jencks Act without such a showing."). Indeed, as discussed above, Martin's counsel cross-examined Pitts thoroughly with respect to the statement in question and elicited testimony to impeach it and to cast doubt Pitts's credibility in general. In short, there is no

---

[17] This disposes of Martin's claim 2) (k).

factual or legal basis for Martin's due process claim based on the government's alleged failure to turn over statements by Pitts.

Nor is there merit to Martin's claim that the government knowingly presenting perjured testimony. The factual basis to which Martin points for this claim is that Pitts "was caught lying, fabricating and embellishing" throughout his testimony. But that generic allegation comes nowhere near the standard Martin must meet to prevail. "When the defendant argues that the government allegedly used perjured testimony, to warrant setting the verdict aside and ordering a new trial, the defendant must establish that: (1) the prosecution's case included perjured testimony; (2) the prosecution knew or should have known of the perjury; and (3) there is a reasonable likelihood that the false testimony could have affected the judgment of the jury." *Shasteen v. Saver*, 252 F.3d 929, 933 (7th Cir. 2001). The mere fact that a government witness offers inconsistent testimony does not suffice. *Id*. (citing *United States v. Verser*, 916 F.2d 1268, 1271 (7th Cir.1990)). Yet that is, at best, what the record here shows.

This brings me to Martin's final claim: that *Rehaif v. United States*, 139 S. Ct. 2191 (2019), requires vacatur of his conviction on Count 22, which charged him with being a felon in possession of a firearm. In *Rehaif*, the Supreme Court held that to obtain a conviction under 18 U.S.C. §§ 922(g), 924(a)(2), the government must show "that the defendant knew he possessed a firearm and also that he knew he had the relevant status when he possessed it." *Id*. at 2194. This holding "upset what was once a seemingly settled question of federal law," under which the government had been required "to prove a defendant knowingly possessed a firearm or ammunition, but not that he knew he belonged to one of the prohibited classes." *United States v. Williams*, 946 F.3d 968, 970 (7th Cir. 2020). But nothing in Martin's one-sentence *Rehaif* claim—which is confined to his conclusory assertion that he "is entitled to relief on this claim because the government failed to

offer any proof at the grand jury or trial that would satisfy the 'knowingly' element" of the offense under *Rehaif*—suggests that this change in the law would have had any impact on my assessment of his guilt. DN 1 at 50.

The government offers a cascade of substantive and procedural reasons for rejecting Martin's *Rehaif* claim, beginning with procedural default and Martin's failure to show cause and prejudice to overcome it, noting in this connection that Martin does not even assert that he lacked the knowledge *Rehaif* requires. The government adds that the trial evidence established beyond a reasonable doubt not only that Martin knowingly possessed a firearm, but also that he knew at the time he did so that he had previously been convicted of a disqualifying felony. The government points to evidence that Martin was in possession of a firearm at the time of his arrest; that he stipulated to being a felon; and that his criminal history at the time included multiple felony convictions, including one for which he was sentenced to eight years of incarceration. *See* R. 1132 at 784 ("Stipulation 13: Defendant, Julian Martin, had been at some time before July 5, 2011, convicted of a felony, which is a crime punishable by imprisonment for a term of imprisonment exceeding one year."); R. 1352 at 16 (presentence investigation report detailing criminal history). Nothing in Martin's § 2255 motion suggests a plausible argument that notwithstanding this evidence, Martin did not know that his previous conviction carried a maximum punishment exceeding a year, placing him within the category of felons disqualified from possessing a firearm. *See Williams*, 946 F.3d at 973 (rejecting *Rehaif* claim where the defendant "[could not] plausibly argue that he did not know his conviction had a maximum punishment exceeding a year."). Accordingly, even if Martin could surmount the procedural hurdles the government raises, I conclude that his *Rehaif* claim has no substantive merit.

III.

For the foregoing reasons, Martin's motions for relief under § 2255, as well as his motions to strike portions of the government's response and for summary judgment, are denied. In addition, I decline to issue a certificate of appealability under 28 U.S.C. § 2253(c)(2) because Martin has not shown that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Miller–El v. Cockrell*, 537 U.S. 322, 336 (2003) (quoting *Slack v. McDaniel*, 529 U.S. 473 (2000)).

**ENTER ORDER:**

**Elaine E. Bucklo**
United States District Judge

Dated: July 15, 2021